UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                           )
RUSSELL BOWDEN,            )
              Plaintiff,   )
                           )
         v.                )        CIVIL ACTION
                           )        NO. 17-11605-WGY
GROUP 1 AUTOMOTIVE,        )
LONG TERM DISABILITY PLAN; )
AETNA LIFE INSURANCE COMPANY; )
                           )
                           )
              Defendant.   )
                           )
```

YOUNG, D.J.                              February 25, 2019

**FINDINGS OF FACT, RULING OF LAW & ORDER FOR JUDGMENT**

I.  **INTRODUCTION**

Russell Bowden ("Bowden") brings this action under the
Employee Retirement Income Security Act of 1974, 29 U.S.C.
§§ 1001 et seq. ("ERISA"), seeking this Court's review of the
AETNA Life Insurance Company's ("Aetna") decision to deny Bowden
benefits under the Group 1 Automotive ("Group 1") Long Term
Disability Plan ("the LTD Plan"), administered and underwritten
by Aetna.  Administrative R. ("Admin. R.") 334, ECF No. 19.
Bowden seeks relief pursuant to section 1132(a)(1)(B) of chapter
29 of the United States Code, which provides that "[a] civil
action may be brought . . . to recover benefits due to him under
the terms of his plan, to enforce his rights under the terms of

the plan, or to clarify his rights to future benefits under the
terms of the plan." See Compl. 5, 9, ECF No. 1. The parties
cross-moved for summary judgment, but later agreed to proceed as
a case stated. Pl.'s Mot. Summ. J., ECF No. 46; Defs.' Cross
Mot. Summ. J., ECF No. 52; Electronic Clerk's Notes, ECF No. 60.[1]
Bowden asks this Court to reverse Aetna's decision, remand for
further administrative proceedings, and award him attorney's
fees and costs as provided by section 1132(g) of chapter 29 of
the United States Code. Compl. 9. Aetna and the LTD Plan[2] ask
this Court to affirm its decision under the LTD Plan and award
it costs. Defs.' Cross Mot. Summ. J. 2.

Bowden raises two challenges to Aetna's decision as
administrator of the LTD Plan: Bowden claims that Aetna failed
to: (i) properly weigh the medical evidence and (ii) consider
his contemporaneous award of social security benefits. Pl.'s
Mem. Supp. Summ. J. ("Pl.'s Mem.") 1, ECF No. 48. Aetna offers
two ripostes. Aetna asserts that (i) Bowden has not met his

---

[1] The case stated procedure allows the Court to render a
judgment based on the largely undisputed record in cases where
there are minimal factual disputes. In its review of the
record, "[t]he [C]ourt is . . . entitled to 'engage in a certain
amount of factfinding, including the drawing of inferences.'"
TLT Constr. Corp. v. RI, Inc., 484 F.3d 130, 135 n.6 (1st Cir.
2007) (quoting United Paperworkers Int'l Union Local 14 v.
International Paper Co., 64 F.3d 28, 31 (1st Cir. 1995)).

[2] References to Aetna as a party include both Aetna and the
LTD Plan.

burden to prove that he is totally unable to fulfill his occupational duties due to his subjective dizziness and (ii) Bowden shifted the burden to Aetna to obtain information to support his claim. Defs.' Reply Mem. L. Further Supp. Cross-Mot. Summ. J. ("Defs.' Reply") 1, ECF No. 59.

Because Bowden failed to bring forward objective evidence to support his claim of total disability, the Court finds and rules that Bowden is not entitled to benefits under the LTD plan. Judgment will enter for Aetna.

## II. FINDINGS OF FACT

Group 1 employed Bowden as a car salesman. Admin. R. 2, 45. Group 1's Short Term Disability ("STD") and LTD plans, which Aetna administered and underwrote, covered Bowden. Id. at 45, 334, 1097. If Aetna determines that an individual is disabled within the plan's terms, the individual is entitled to benefits. Id. at 341. The LTD plan defines total disability as follows: "[y]ou cannot perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy-related condition; and [y]our earnings are 80% or less of your adjusted predisability earnings." Id. (emphasis in the original)

The LTD plan further provides that "[a]fter the first 24 months of your disability that monthly benefits are payable, you meet the plan's test of disability on any day you are unable to

work at any _reasonable_ _occupation_ solely because of an _illness_, _injury_ or disabling pregnancy-related condition." Id. (emphasis in original).

The LTD plan defines "material duties" as duties that are "normally required for the performance of your _own occupation_; and [c]annot be reasonably omitted or modified." Id. at 355 (emphasis in the original). Working "in excess of 40 hours per week," however, "is not a material duty." Id.

As a car salesman at Group 1, Bowden's role involved "some desk work," "walking around the car lot," and "light lifting." Id. at 1001. Bowden last worked on February 11, 2013. Id. at 948. He was then 57 years old. See id.

On the same day Bowden stopped working, he visited his primary care physician, Dr. Mark Romanowsky ("Dr. Romanowsky"). Id. at 654. Due to his reported shortness of breath, in the context of his coronary artery disease and prior stenting, Dr. Romanowsky sent Bowden to a cardiologist for an "[e]mergency evaluation with further testing." Id.

In February and April 2013, Bowden visited a cardiologist, Dr. Robert Shulman ("Dr. Shulman"), with complaints of chest discomfort and dizziness. Id. at 407-08. Dr. Shulman found his physical examinations unremarkable, however, and concluded that his dizziness was not cardiogenic. Id. at 407-08, 1563.

In March 2013, the Ear, Nose and Throat ("ENT") specialist

[4]

Dr. Fred G. Arrigg ("Dr. Arrigg") treated Bowden for dizziness

on a referral from Dr. Romanowsky. Id. at 1591. Dr. Arrigg

summarized Bowden's reported symptoms as follows:

> Ever since [the snowstorm during which Bowden worked
> outside] he has been bothered by this dizzy sensation
> that comes and goes. He said it is usually present every
> day but can disappear for most of the day at times. . . .
> He does drive but is reluctant to do so on most
> occasions. He denied any true spinning sensation. . . .
> He denied any fluctuation in hearing, new onset tinnitus
> or fullness in the ears. He also denied any slurred
> speech, double vision, or mental confusion.

Id. at 431. Dr. Arrigg conducted a Romberg test[3] in order to

evaluate Bowden's ability to balance. Id. at 433. The test

came back negative, thus indicating that Bowden did not have

difficulties balancing. See id. Bowden also underwent

rotational chair vestibular studies, which yielded "normal"

results, during a follow-up visit in March 2013. Id. at 433,

436. After Bowden's first visit, Dr. Arrigg opined that

Bowden's complaints did not reflect a vestibular disorder. Id.

at 433.

In March 2013, Dr. Romanowsky filled an Attending Physician

Statement ("APS") in support of Bowden's STD claim. Id. at

1607-09. Dr. Romanowsky later concluded in July 2014 in his APS

for Bowden's LTD claim that Bowden "cannot consistently maintain

---

[3] "Romberg is a diagnostic test through which to assess
neurological functions for balance caused by central and
peripheral vertigo." Defs.' Counterstatement of Material Facts
¶ 24, ECF No. 54.

a work day because of his condition" and thus could only work one hour a day, one day a week. Id. at 740.

In May 2013, Bowden saw neurologist Dr. Min Zhu, M.D., Ph.D. ("Dr. Zhu") twice for his dizziness and palpitations. Id. at 505, 508. Dr. Zhu ordered an MRI and MRA of Bowden's brain and a carotid artery ultrasound to exclude a cardiac problem or an endocrine tumor. Id. at 507. Those follow-up tests did not reveal any such issues. Id. at 419, 423-24, 507. In her physical exams, Dr. Zhu did not find typical vertigo symptoms or nystagmus. Id. at 506-07, 509. Nystagmus is a vision condition that can impact balance and coordination. Defs.' Counterstatement of Material Facts ¶ 125, ECF No. 54. She concluded that Bowden might also be suffering from anxiety. Id. at 510. Dr. Zhu suggested "further evaluation by ENT or neuro-otology [specialists] at academic centers" and suspected a "significant psychologic component in his claims." Id. at 507.

At an appointment on June 7, 2013, Dr. Romanowsky did not find that Bowden had nystagmus and found that Bowden "was able to ambulate." Id. at 1515. Bowden returned to Dr. Romanowsky's office on June 20, 2013. Id. at 1517. Dr. Romanowsky and Bowden "discussed [Bowden's] case with a specialist from the Mayo [Clinic]." Id. at 393, 1517. The Mayo Clinic specialist

"suggested the diagnosis of Chronic Subjective Dizziness[4] ("CSD")
and a trial of Fluoxetine." Id. at 393. "Fluoxetine is
intended to be used for the treatment of major depressive
disorder, Obsessive Compulsive Disorder, Bulimia Nervosa, and
Panic Disorder." Id. at 591. Dr. Romanowsky also noted in June
2013 that Bowden was "willing to try" Fluoxetine. Id. at 1517.
At that same visit, Dr. Romanowsky observed that Bowden was
"[s]till not able to work." Id.

At a later visit, on August 12, 2013, Dr. Romanowsky
reported that Bowden did not have "focal neurological" deficits,
or nystagmus. Id. at 1542. He also questioned whether Bowden
suffered from a "chronic anxiety syndrome" and remarked that
Bowden was undergoing psychotherapy. Id. After an appointment
eight days later, Dr. Romanowsky reported that Bowden had "focal
neurological issues." Id. at 1521. That same day, Dr.
Romanowsky recorded that Bowden's upper and lower extremities
showed "good strength." Id.

After a visit one year later, Dr. Romanowsky noted that
Bowden's "chief complaint" was depression. Id. at 924.

In July 2013, the psychiatrist Dr. Chand Bhan ("Dr. Bhan")
diagnosed Bowden with anxiety and adjustment disorder but did

---

[4] "Chronic Subjective Dizziness syndrome is a poorly-defined
neurological condition that is not currently considered a mental
disorder although psychiatric comorbidity (particularly anxiety
disorder) is quite common." Admin. R. 1158.

not specify Bowden's disorders' origins. Id. at 493. Dr. Bhan described Bowden's mood as anxious and continued Bowden's treatment of anxiety disorder with Fluoxetine. Id. at 490-491.

In August and December 2013, Bowden visited a vascular neurologist, Dr. Jason Viereck ("Dr. Viereck"), for the dizziness he reported was progressing. Id. at 500, 503. Dr. Viereck stated that he did "not know of a neurological syndrome that is consistent with this clinical picture." Id. at 504. Dr. Viereck described Bowden as "well nourished, in no distress," but noted that "he has a constant dizziness that is difficult to describe." Id. at 503. Dr. Viereck also observed that Bowden has "difficulty concentrating" but "no depression or anxiety." Id. Bowden reported no changes in hearing and that he had high-pitched tinnitus. Id. In his physical examination, Dr. Viereck found that Bowden could "[m]aintain[] posture with eyes closed," "walk on [his] heels and toes," but could not "maintain tandem stance with eyes closed." Id. at 504. He noted that Fluoxetine "helps take the edge off [Bowden's] symptoms." Id. at 503. During Bowden's December 2013 follow-up visit, Dr. Viereck conducted another physical exam of Bowden, and observed that his "examination is not significantly changed." Id. at 501. Dr. Viereck concluded that "symptomatic treatment with [Fluoxetine] [wa]s reasonable." Id.

In November 2013, Aetna's physician review of Bowden's STD

claim described his occupation as "Sales Counselor," which constitutes a "light physical demand level occupation." Id. at 1186. The review considered Dr. Romanowsky's reports from Bowden's visits from March to August 2013.

In July 2014, Dr. Romanowsky answered questions in Aetna's Capabilities and Limitations Worksheet ("CLW") within Aetna's processing of Bowden's LTD claim. Id. at 742. He answered the question "[c]an the Patient operate a motor vehicle?" affirmatively. Id. Dr. Romanowsky also observed that Bowden could continuously walk and lift up a hundred pounds or more. He further answered "yes occasionally" about whether Bowden could climb, pull, push, grasp firmly with his hands, and stoop. Id. He noted that Bowden "frequently" was able to reach forward, carry, perform fine and gross manipulation, sit, and stand. Id. He opined that Bowden has "no limitation" speaking or hearing but did have "occasional blurred vision" and had "depth perception" issues related to his peripheral vision. Id. He noted that Bowden was not able to crawl, kneel, reach above his shoulder, bend, or twist. Id.

In July 2014, Dr. Romanowsky then completed an APS in support of Bowden's LTD claim. Id. at 739. He stated that he first prescribed restrictions on Bowden's work activities on February 21, 2013, due to Bowden's subjective chronic dizziness. Id. at 740. He stated that Bowden "cannot consistently maintain

a workday because of [his] condition." Id.

From December 2014 until April 2015, Bowden underwent chiropractic treatment for his neck, mid-back, and his headaches. Id. at 541, 590. Bowden's chiropractor, Dr. Steven Saro ("Dr. Saro"), concluded that Bowden had "Hypolordosis of lumbar spine . . . [a] sign of disc degeneration." Id. at 571. Dr. Saro also discussed Bowden's multiple medications, some of which cause dizziness as a side effect. Id. at 564. Over these 4 months of frequent visits by Bowden Dr. Saro observed that Bowden in general, considered himself to be in good health and reported exercising moderately on a regular basis. Id.

In July 2014, Aetna conducted an LTD Claimant interview with Bowden. Id. at 283. Bowden reported that:

> [H]e drives very little and only when he has too
> [sic]. He said last year he drove 2 hours to Vermont
> and felt good when he got there but it took him 6
> hours on the way home because he had to many times on
> the way home and had to take the back roads[.] He is
> able to take care of his personal hygiene on his
> own[.] He is able to do house chores to a degree. He
> can't getting things from the low shelf from the
> refrigerator. He said he just has to be careful. He
> is usually able to cook and prepare meals, not all the
> time but usually. He is able to do his grocery
> shopping. He said he will walk to the store. He said
> the inside of the store is overstimulating and gets
> more dizzy when he does it and takes his time. [H]e
> tends to bump into people. He said he is not steady at
> all in a store but it's something he does. He said
> sometimes he will leave prematurely. He carries the
> groceries home.

Id. at 283. In response to the question of what were the

"current barriers preventing [him] from returning to [his] occupation," he answered that "dizziness interferes [with] his walking [and] thinking" and he "can't do any part" of his previous job. Id. at 327.

In July 2014, Dr. Sally M. Wilkinson ("Dr. Wilkinson"), Licensed Clinical Psychologist, id. at 390-96, and Dr. Theresa Oney-Marlow ("Dr. Oney-Marlow"), Physical Medicine and Rehabilitation specialist, conducted internal medical reviews of Bowden's LTD claim for Aetna, id. at 402-11. They both concluded that Bowden had "adjustment disorder with mixed anxiety and depressed mood." Id. at 390, 402. Both doctors also came to the result that Bowden did not provide medical evidence that he was functionally impaired from February 2013 until the time of review in July 2014. Id. at 396, 410. Neither reviewer physically examined Bowden. Id. at 390-97, 402-11.

On February 28, 2013, Bowden applied for STD benefits under Group 1's STD Plan, insured by Aetna. Id. at 1076. Bowden's STD claim was approved with a disability onset date of February 12, 2013. Id. at 1115. The STD benefits approval period ran from February 26, 2013 until the maximum benefit end date of August 12, 2013, although Aetna only approved Bowden's claim through April 20, 2013. Id. On April 30, 2013, Aetna closed the STD claim. Id. at 1000. Aetna sent Bowden his notice of

denial on May 3, 2013.  Id. at 1117-18.  On September 16, 2013, Aetna received Bowden's appeal of the denial of his STD benefit claim.  Id. at 1143.  Aetna upheld the denial on December 11, 2013.  Id. at 1193-94.

On June 5, 2014, Aetna received Bowden's application for LTD benefits based on chronic dizziness and chronic rhomboid strain.  Id. at 1379.  On July 22, 2014, Aetna denied Bowden's LTD claim.  Id. at 152-54.  On January 16, 2015, Bowden appealed his LTD claim denial.  Id. at 707.  By letter of August 27, 2015, Aetna upheld the denial.  Id. at 179-81.

Since August 12, 2013, Bowden has received Social Security disability benefits, id. at 941, at a monthly rate of $1,714 per month, id. at 5.

On August 26, 2017, Bowden filed a complaint in this Court for review of Aetna's decision to deny him LTD benefits.  Compl. 1.

## III. RULINGS OF LAW

Bowden raises the following challenges to Aetna's final decision: Aetna (i) improperly weighed the medical evidence and (ii) failed to take the award of social security benefits into account.  Pl. Mem. 1.  In response, Aetna contends that Bowden has not met his burden to prove that he is totally unable to fulfill his occupational duties due to his subjective dizziness. Defs.' Reply 8.  Aetna further suggests that Bowden improperly

attempts to shift his burden to obtain benefit information in support of his claim. Id. at 8.

### A.   Standard of Review

The Court reviews Aetna's decision to deny Bowden LTD benefits de novo because the LTD Plan does not give Aetna discretionary authority to determine the eligibility for benefits or to construe the terms of the plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109, 115 (1989).

"[D]e novo review generally consists of the court's independent weighing of the facts and opinions in [the administrative] record to determine whether the claimant has met his burden of showing he is disabled within the meaning of the policy." Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 518 (1st Cir. 2005). The plaintiff bears the burden of proving his disability. Richards v. Hewlett-Packard Corp., 592 F.3d 232, 239 (1st Cir. 2010).

The Court does not give special deference to the opinion of Bowden's treating physician. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003); Orndorf, 404 F.3d at 526; Parnagian v. Metlife Disability Ins. Co., Civ. A. No. 14-14254-IT, 2017 U.S. Dist. LEXIS 162474, at *2-3 (D. Mass. Sept. 29, 2017) (Talwani, J.).

### B.   Weight Given to Medical Evidence

Bowden argues that the plan administrator failed to weigh properly the medical opinion evidence and determine whether Bowden could perform the duties of his own occupation. Pl's Mem. 13. First, according to Bowden, the subjective nature of his chronic subjective dizziness might not allow for objective testing, so the administrator should have put more weight on the subjective evidence. See Pl.'s Mem. at 14-15. Second, Bowden points to two treating physicians' reports by Drs. Viereck and Romanowsky that he claims the independent reviewers of his case did not take into account in determining his limitations. Pl's Opp'n at 6-7. Aetna counters that record shows that both medical reviewers considered all treating physicians' reports. Defs.' Counter Statement of Facts ¶ 90.

Bowden's first argument falters because he needed to provide objective evidence of his inability to work, not his medical diagnosis. A plan administrator cannot "require objective evidence to support [ERISA] claims based on medical conditions that do not lend themselves to objective verification, such as fibromyalgia," but can "require objective support that a claimant is unable to work as a result of such conditions." Desrosiers v. Hartford Life & Accident Co., 515 F.3d 87, 93 (1st Cir. 2008); see also Tracia v. Liberty Life Assurance Co. of Bos., 164 F. Supp. 3d 201, 223(D. Mass. 2016) (Dein, M.J.) (stating that "Liberty reasonably interpreted the

Policy to require objective evidentiary support for [plaintiff's] claim of disability"); cf. Tebo v. Sedgwick Claims Mgmt. Servs., 848 F. Supp. 2d 39, 62 (D. Mass. 2012) (Saylor, J.) (ruling that the denial of benefits was not arbitrary or capricious where the medical reviewers found that the subjective evidence for claimant's complete visual disability did not meet the standard set by generally accepted guidelines).

Bowden claims total disability because of the "consistent nature of [his] complaints" and "their debilitating description." Pl.'s Mem. 13. Aetna argues that it based its decision on the "lack of evidence of a functional impairment." Defs.' Reply 4. Aetna asserts that "Bowden failed to produce any objective medical evidence that he was functionally impaired from working at his own occupation." Id.

Bowden does not recognize the difference between his "debilitating descriptions" of his symptoms and objective evidence of his inability to return to his own occupation. Pl.'s Mem. 13. In his LTD Claimant Interview, Bowden reported that "he drives very little and only when he has to." Admin. R. 20. He further opines that "he can't do any part of his job." Id. at 327. He further stated that "dizziness interferes [with] his walking [and] thinking." Id. at 22. Nevertheless, these self-reported limitations do not warrant the inference that his CSD symptoms cause total and permanent disability because

Bowden's statements do not constitute objective evidence that he cannot perform those tasks.

Second, the record belies Bowden's protest that Aetna's medical reviewers did not consider Drs. Romanowsky's and Viereck's findings. See id. at 179, 390-96, 402-411. Aetna's appeal decision letter explains that Aetna's medical reviewers analyzed Drs. Romanowsky and Viereck's reports. Id. at 179. Moreover, Drs. Wilkinson and Oney-Marlow's physician review sheets show that they reviewed both doctors' findings. Id. at 394, 409. Thus, the record warrants the inference that Aetna reviewed Dr. Romanowsky's and Dr. Viereck's opinions to which Bowden refers.

Because the standard is de novo this Court reviews the question of Bowden's disability independently. Orndorf, 404 F.3d at 526. Treating physicians' opinions do not necessarily deserve more weight in this analysis. See Gross v. Sun Life Assurance Co. of Can., 880 F.3d 1, 14 (1st Cir. 2018) (citing Orndorf, 404 F.3d at 526). Where, however, the disability determination turns on "the claimant's credibility . . . the impressions of examining doctors sensibly may be given more weight than those who looked only at paper records." Id.

The Court finds that most of Drs. Romanowsky and Viereck's reports go to their medical diagnosis of CSD as opposed to whether Bowden credibly claims he cannot work. To the extent

that they go to Bowden's ability to work, the Court observes that both doctors contradict themselves in various documents about Bowden's abilities.

Dr. Romanowsky reported Bowden had "some rotary nystagmus on vertical gaze" in his visit in November 2013. Admin. R. 1450. Dr. Viereck found in August 2014 that Bowden "could not maintain [a] tandem stance with eyes closed." Id. at 501. Bowden's precise ailment is not necessarily material for resolving the dispute about his disability to fulfill his job duties. See Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9, 16 (1st Cir. 2003) ("[E]ven if the diagnoses are established, [plaintiff's] physical abilities are not so diminished as to prevent her from performing the duties of her own or any other similar occupation.").

Aetna further argues that the objective evidence Bowden presented was inconsistent with the totality of the administrative record. Defs.' Reply 3. Aetna asserts that all of his treating doctors, other than Dr. Romanowsky, "agreed that he can walk, sit, talk and think straight . . . [and] drive a car. These activities are all necessary for him to be able to perform the material duties of his own occupation of a car salesman." Id. at 2.

Even though the treating physicians' findings show some limitations of his gaze and gait, they do not reveal how these

limitations might affect his ability to fulfill his material
duties at his occupation.  See Admin. R. 501, 1450.
Importantly, they do not explain why Bowden could not modify his
duties.  These findings did not explain for example, why he
could not do some desk work and why he cannot from time to time
"walk[] around in the car lot."  Id. at 1001.

Bowden further argues that Dr. Romanowsky found in Aetna's
APS and CLW forms from July 2014 that he "cannot consistently
maintain a workday because of [his] condition."  Pl.'s Mem. 10
(quoting Admin. R. 740).

Dr. Romanowsky, however, contradicts himself in the same
document. For instance, Dr. Romanowsky acknowledges that Bowden
could "drive a car," "constantly lift up a hundred pounds or
more, and "walk."  Id. at 742.  Moreover, notwithstanding
Bowden's dizziness, Dr. Romanowsky asserted that Bowden could
"perform repetitive motion," "stoop," and "stand."  Id.
These descriptions of Bowden's day-to-day activities do not show
any severe limitations.  Moreover, Dr. Romanowksy does not
explain how he is able to infer Bowden's total disability given
the information he provided in the CLW.

The conclusion that Bowden's disability is not just total
but also long-term[5] is also inconsistent with Dr. Romanowsky's

---

[5] In the CLW, Dr. Romanowsky did not give any indication of
how long Bowden would be totally disabled.  Admin. R. 742.

earlier finding that selective serotonin reuptake inhibitors "may help mitigate the symptoms." <u>Id.</u> at 924-25. If medication eventually could ameliorate his symptoms, Dr. Romanowsky could not conclude that these symptoms are permanent.

Finally, the record does not show that Dr. Romanowsky, as Bowden's primary care physician, treated Bowden with a frequency and intensity that would be justified were Bowden's symptoms as severe as Bowden characterizes them. Dr. Romanowsky's CLW is from June 2014, and, at that time, Bowden had not even scheduled another appointment with him. <u>See id.</u> at 739, 742.

Likewise, Bowden put forward Dr. Viereck's findings to show his limited functionality. Pl.'s Mem. 16. Bowden, however, quoted Dr. Viereck's report out of the context of its overall findings. Admin. R. 500-04. Far from finding that Bowden is totally disabled, Dr. Viereck determined that Bowden had normal motor strength and sensory abilities. <u>Id.</u> at 504. He did not prescribe any medications for Bowden but suggested that Bowden's current treatment with Fluoxetine was "reasonable." <u>Id.</u> at 503-04. Even if Dr. Viereck's finding about Bowden's inability to maintain a tandem stance with his eyes closed were read out of context, Dr. Viereck never opined on how his finding affects Bowden's fulfillment of his job duties.

Dr. Viereck's finding needs to be compared to other treating physicians' findings on Bowden's purported impairment.

From December 2014 until April 2015, Dr. Saro treated Bowden.
Id. at 541, 590.  In March 2015, Dr. Saro found "in general, the
patient considers himself to be in good health" and reported
that Bowden "state[d] that he performs moderate exercise on a
regular basis."[6]  Id. at 590.

Thus, Drs. Romanowsky and Viereck's findings do not show
that Bowden was totally disabled.

### C.   Aetna's Failure to Address Bowden's Social Security Disability Insurance Benefits

Bowden argues that the plan administrator failed to take
into account that Bowden was granted Social Security disability
benefits.  Pl.'s Mem. 20.  "[B]enefits eligibility determinations
by the Social Security Administration," however, "are not
binding on disability insurers."  Richards, 592 F.3d at 240
(quoting Pari-Fasano v. ITT Hartford Life and Accident Ins. Co.,
230 F.3d 415, 420 (1st Cir. 2000)).  To qualify for disability
benefits under a plan, a claimant must satisfy the plan's
definition of disability, not the definition of disability under
the Social Security Act.  See Matías-Correa v. Pfizer, Inc., 345
F.3d 7, 12 (1st Cir. 2003).  A positive decision under the
Social Security Act (the "Act") "should not be given controlling
weight except perhaps in the rare case in which the social

---

[6] Bowden reported to Dr. Saro in February 2015 that he had
"been very active with shoveling snow which is aggravating his
condition."  Admin. R. 565.

[20]

security statutory criteria are identical to the criteria set forth in the insurance plan." Morales-Alejandro v. Medical Card Sys., Inc., 486 F.3d 693, 699-700 (1st Cir. 2010) (quoting Pari-Fasano, 230 F.3d at 420). The claimant has to show that the relied-upon Act criteria and the plan's relevant criteria are identical. Id. If the claimant does not argue that the plan's criteria are identical to the Act's criteria, the claimant has "waived that strand of argument." Richards, 592 F.3d at 240. Nevertheless, the fact that Social Security has awarded benefits to a claimant is "relevant evidence of disability." Cowern v. Prudential Ins. Co. of Am., 130 F. Supp. 3d 443, 468 (D. Mass. 2015) (Burroughs, J.).

Aetna argues that Bowden failed to compare the Social Security Administration's (the "Administration") standards for awarding Social Security disability benefits to the applicable disability test for his own occupation. Defs.' Reply 9. Bowden counters that Aetna failed to distinguish its LTD claim decision from the Social Security disability decision. Pl's Mem. 20. Bowden asserts that both Social Security and the LTD Plan use "attendance, persistence and pace" to define total disability. Pl.'s Mem. 13 n.4.

Bowden does not compare the LTD Plan and the Act's criteria to support giving the Administration's decision controlling weight. He simply relies on one criterion used under the Act.

_Id._  To qualify for disability under the LTD Plan, however, Bowden needed to show, among other things, that he could not "perform the material duties" of a car salesman.  _See_ Admin. R. 341.  The LTD Plan defines "material duties" as duties which "[c]annot be reasonably omitted or modified."  Admin. R. 355. As matter of fact, the Act's criterion "attendance, persistence, and pace," which Bowden cites, is far more generous to claimants than the LTD plan's definition of disability because the LTD Plan does not deem a claimant disabled if their employer can reasonably omit or modify their duties.  _See id._  Here, Bowden failed to prove that he cannot modify his work day to accommodate breaks.  Therefore, the Social Security Administration's decision to grant disability benefits does not control this case.

Bowden further complaints that Aetna does not "even mention[] the occurrence in its denial letter."  Pl.'s Mem. 20. He asserts that Aetna should have "retrieve[d] medical records from the [Social Security Disability Insurance] file, which [he] had authorized."  _Id._  Aetna asserts that Bowden had the burden of proof to provide all information that purportedly supports his disability claim.  Defs.' Reply 8.

Under ERISA, an administrator must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the

specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The plan administrator is "not entitled to ignore the [Social Security Disability Insurance] award simply because the formal . . . award letter was not before it." Cowern, 130 F. Supp. 3d at 468.

Plan administrators must inform claimants that their file is missing their Social Security Disability Insurance letter and furnish claimants with the opportunity to send the letter as well as any other information the plan administrator needs to evaluate the Administration's disability determination. See id. "'ERISA's notice requirements are not meant to create a system of strict liability for formal notice failures'; rather, the beneficiary need only be 'supplied with a statement of reasons that, under the circumstances of the case, permit a sufficiently clear understanding of the administrator's position to permit effective review.'" Tebo, 848 F. Supp. 2d at 56 (quoting Terry v. Bayer Corp., 145 F.3d 28, 39 (1st Cir. 1998) (holding that review process is sufficient if denial letter defines plan's disability standard, states specific reasons for denying claim and, if plan administrator is in direct contact with claimant, assuring understanding).

Even if the plan administrator fails to furnish the requisite notice, however, the claimant must show prejudice in

order to gain relief. _See id._ at 56; _see also_ Dickerson v.
Prudential Life Ins. Co., 574 F. Supp. 2d 239, 249 n.12 (D.
Mass. 2008) (citing _Terry_, 145 F.3d at 39)) ("The Court also
notes that, even if the letters were technically deficient, [the
claimant] would have to prove actual prejudice in order to be
entitled to relief."). A claimant fails to show prejudice when
the claimant "has not presented any evidence that implies that a
different outcome would have resulted had the notice been in
formal compliance with the regulations." _Tebo_, 848 F. Supp. 2d
at 56 (quoting _Terry_, 145 F.3d at 39).

Although here Bowden's award letter is not included in the
Administrative Record, Aetna's administrative record shows that
Bowden has been receiving Social Security disability benefits.
Admin. R. 5. Thus, even if Bowden did not provide Aetna with
his award letter, the plan administrator acquired actual
knowledge of Bowden's award of Social Security benefits through
its inquiry about his then-current income. _Id._

Aetna's failure to ask for specific information about
Bowden's Social Security award in its letter denying Bowden's
LTD claim does not aid Bowden. _See id._ at 152-54. Aetna argues
the letter "encouraged [Bowden] to provide diagnostic testing or
narrative reports detailing how Bowden's condition impacted his
daily life." Defs.' Mem. Law Opp'n Pl.'s Mot. Summ. J. And
Supp. Their Cross-Mot. Summ. J. ("Defs.' Mem.") 16, ECF No. 53.

The denial letter states that "it was determined that there is a lack of medical evidence to support impairment from the performing the material duties of your own occupation." Admin. R. 153. Further, the denial letter offers to "review any additional information you care to submit." Id. Thus, Aetna not only informed Bowden of its decision on the evidence, but also indicated that he should send Aetna additional information supporting his claim. As a consequence, the totality of the record persuades this Court that Aetna made clear to Bowden why it denied his claim and what they needed to review it.

Finally, Bowden did not show how, even if Aetna had mentioned the Social Security award in its denial letter and retrieved the medical records contained in his Social Security file, see Pl's Mem. 20, it would have perfected Bowden's LTD claim. See Dickerson, 574 F. Supp. 2d at 249 n.12. As such, Bowden failed to demonstrate that Aetna's process caused him prejudice.

### D.    Recovery of Attorney's Fees and Costs

Bowden requested attorney's fees and costs in his complaint and Aetna asked for costs in its cross-motion for summary judgment. Compl. 9; Defs.' Cross Mot. Sum. J. 2. Neither party briefed the issue. See generally Pl.'s Mem; Defs.' Mem; Pl.'s Mem. Opp'n Defs.' Cross-Mot. Summ. J. And Reply Further Supp. Mot. Summ. J., ECF No. 57; Defs.' Reply. Under section

1132(g)(1) of chapter 29 of the United States Code, this Court

has discretion to "allow a reasonable attorney's fee and costs

of action to either party." Giannone v. Metropolitan Life Ins.

Co., Civ. A. No. 02-11119 (RGS), 2004 U.S. Dist. LEXIS 13280, at

*4 (D. Mass. 2004) (Stearns, J.); see also Twomey v. Delta

Airlines Pilots Pension Plan, 328 F.3d 27, 33 (1st Cir. 2003)

(reviewing grant or denial of attorney's fees for abuse of

discretion).[7]

The Court proceeds to consider whether Aetna ought receive

its costs using the same general guidelines which apply to fees

and costs in its interpretation of 29 U.S.C. § 1132(g)(1), which

speaks to both. The First Circuit has identified five non-

exclusive factors that a court should consider when ruling on an

application for fees and costs under ERISA:

> (1) the degree of bad faith or culpability of the losing
> party; (2) the ability of such party to personally
> satisfy an award of fees; (3) whether an award would
> deter other persons acting under similar circumstances;
> (4) the amount of benefit to the action as conferred on
> the members of the pension plan; and (5) the relative
> merits of the parties' positions.

---

[7] Because judgment will enter against Bowden, he may not
recover his attorney's fees. Cf. Gross v. Sun Life Assurance
Co., 880 F.3d 1, 22 (1st Cir. 2018)(ruling that fees eligibility
depended on a certain degree of success, such as changing to a
less deferential standard of review and remanding the claim back
for reconsideration of claim for benefits).

Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 257-258
(1st Cir. 1986). The Court need not consider every factor, and
no one factor is dispositive. See id. at 258.

The First Circuit has thus rejected "a presumption in favor
of awarding fees to a prevailing plaintiff in ERISA benefits
cases." Colby v. Assurant Emp. Benefits, 818 F. Supp. 2d 365,
384 (D. Mass. 2011) ("Colby II"); see also Colby v. Assurant
Emp. Benefits, 635 F. Supp. 2d 88, 91 (D. Mass. 2009) ("Colby
I") (awarding plaintiff attorney's fees and remanding the case
to the plan administrator for reconsideration).

The first prong justifies an award of attorney's fees in
cases where the non-prevailing plaintiff has acted in bad faith.
For example, the First Circuit in Twomey held that the district
court did not abuse its discretion when the district court
denied a prevailing defendant attorney's fees because the
plaintiff did not sue in bad faith and the district court did
not want to deter other plaintiffs with valid claims. 328 F.3d
at 33. Similarly, in Gray, the First Circuit affirmed the
district court's denial of attorney's fees on the ground that
the Court would "not equate failure of proof with bad faith."
792 F.2d at 259-60.

Here, Bowden's claim was not without any merit. His claim
was not frivolous: the fact that one administrator had awarded
him disability benefits could make him reasonably believe he

[27]

could use the award as objective evidence for his claim of total disability with another administrator. See Admin. R. 5, 46. Further, Aetna lacked discretion under the LTD plan, so Bowden's claim faced de novo, as opposed to arbitrary and capricious, review. Cf. Giannone, 2004 U.S. Dist. LEXIS 13280, at *7-8 & n.4 (pointing out that the "arbitrary and capricious" standard is a "high legal barrier" to a successful district court claim). Bowden had some grounds to believe that a new set of eyes might have weighed his evidence differently since his complex medical record showed inconsistent assessments of physicians. See id. at *7 & n.4 (determining that plaintiff faced an uphill battle to making her case based on a complex medical record that confused some of her physicians). Thus, the first prong does not justify awarding costs to Aetna.

The "second factor was intended primarily to limit the award of attorneys' fees against parties who could not afford them." Colby II, 818 F. Supp. 2d at 385; Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 227 (1st Cir. 1996) ("An inability to afford attorneys' fees may counsel against an award but the capacity to pay, by itself, does not justify an award." (internal citation omitted)), abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242 (2010). Here, the Social Security administration has awarded Bowden benefits throughout the review of his LTD claim. Admin. R. 5.

This suggests that Bowden cannot afford Aetna's costs. Thus, his likely inability to pay weighs against ordering him to pay Aetna's costs.

The third prong of deterrence weighs in favor of Bowden in this case. "[T]he deterrent value of a fee award is considerable." Colby II, 818 F. Supp. 2d at 385. Aetna's medical reviewers diagnosed Bowden with "adjustment disorder with mixed anxiety and depressed mood," which may cause psychological impairments. Admin. R. 390, 402. If the Court ordered Bowden to pay Aetna's costs, other similarly situated claimants -- some of whom may have stronger claims than Bowden -- might not try to seek review of their claims if they face a much higher financial risk than claimants with physical disabilities which are easier to prove. See Colby II, 818 F. Supp. 2d at 385 ("[P]olicyholders benefit from plan administrators' equal treatment of claims arising from physical and mental disabilities."). Thus, the first, second, and third prongs of the five-factor test counsel against an award of costs to Aetna. Accordingly, the Court denies Aetna's motion for costs.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Aetna's cross-motion for summary judgment, ECF No. 52, and DENIES Bowden's

motion for summary judgment, ECF No. 46, and the parties'
requests for attorney's fees and costs, ECF Nos. 1, 52.

**SO ORDERED.**

William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE